# INDEPENDENT CONTRACTOR AGREEMENT

This Agreement is made this <u>14</u> day of <u>March</u>, <u>2021</u>, in <u>Panama</u> [city], <u>Panama oeste</u> [state] between Caribbean Staffing Solutions, a Turks & Caicos company with an address of P.O. Box 64, Suite C12, Marketplace Providenciales, Turks & Caicos Islands, BWI (hereinafter referred to as "CSS" or the "Company") ~~and Principal Auctioneer~~ / ~~Gallery Director~~ / ~~Art Associate~~ / ~~Art Assistant~~ / Art Steward <u>Christhian Oliver Gonzalez</u> with an address of <u>Arraijan bda 7 September c16 c 22</u>, with a date of birth of <u>February 17 1975</u>, having been born at <u>Panama city</u>, and of <u>Panamenian</u> nationality ,resident of <u>Panama</u> (hereinafter referred to as "IC").

In consideration of the parties' mutual promises, and other good and valuable consideration, the adequacy of which is acknowledged by the parties, it is agreed as follows:

1.    ENGAGEMENT.

A.    The Company hereby engages IC as an independent contractor on a voyage-to-voyage basis, commencing on <u>14-Mar-2021 | 4:34 PM EDT</u>, subject to termination or renewal as set forth below. For the purposes of this agreement, a "voyage" means the journey beginning when the passengers first embark the ship and ending when the passengers finally and permanently disembark the ship, usually (but not always) at the same port. Each voyage may vary in length from the voyages before and after it. In each instance, the voyage shall correspond to the journey commonly referred to by passengers as the "cruise."

B.    IC is to serve in the following capacity: to sell (including, but not limited to, by auctioning) art, framing, and related products; to manage, supervise, and promote all aspects of the program for presenting and selling art (or to assist in any of these services) on such vessels as the Company in its sole discretion deems suitable, and subject to availability. Upon the Company's offer and the IC's acceptance of an assignment on a specific vessel, IC shall provide auctioneering or related services, provide training services as requested, and perform all services in connection with the operation of the fine art concession on the vessel. All of IC's services shall be on cruise ships operating in international waters.

C.    The manner and means by which IC carries out the auction services shall be within the control of IC as an independent contractor, provided, however, that the Company will provide an operating system for IC.

D.    IC shall provide the Company with a certificate issued by a duly qualified practitioner, in a form acceptable to the cruise line, certifying that IC is medically

fit to perform in the capacity set forth herein. The costs for such certificates shall be borne in accordance with the laws of the flag country of the vessel to which IC is assigned.

2.      THIRD PARTY AUCTION FIRMS AND CRUISE LINES.

Third Party Auction Firms ("TPAF") include, but are not limited to, Vista Fine Arts d/b/a Park West. IC has no legal relationship with any TPAF, including as an employee or independent contractor. IC has no legal relationship with any cruise line on whose vessels IC may provide services, including as an employee or cruise line. IC has no right to any compensation or benefits from any TPAF or cruise line, including, but not limited to, health insurance, workers' compensation, or any other insurance or benefits of any type or nature. Likewise, no TPAF or cruise line has responsibility for IC's tax filings. IC has no claims of any type or nature against any TPAF or cruise line.

3.      COMPENSATION.

A.      The Company shall pay the IC a minimum base wage of $1,000 USD per month to a maximum base wage of $1,400.00 USD per month according to the Company's compensation plan. It is not anticipated that IC will work overtime, but if such overtime is worked, IC will be compensated at 1.25 times the base rate for those extra hours. In addition, commissions may be paid based on net revenue (being generally equivalent to 50% of gross sales) and other factors. The Compensation Plan may be changed from time to time at the Company's and/or the applicable TPAF's discretion. In the event of any modification of the Compensation Plan, IC shall be provided a copy of the modified Compensation Plan which shall automatically replace and supplant the current Compensation Plan. Any earnings of IC which are calculated by the POS system provided to IC are only estimates. Compensation shall be paid monthly by wire transfer, absent any wire fees, and IC shall receive a statement of the payments due and the amounts paid. The Company shall pay the IC Vacation Pay of $83. This is equivalent to 2.5 days Vacation per 30 days worked. The Company shall pay the IC Holiday Pay of $33. This is equivalent to 1 day Holiday per 30 days worked.

B.      IC agrees to serve on one or more vessels to be designated by the Company (or TPAF). The date and place on which service on board will commence are shown in Addendum A to this Agreement. Any subsequent assignment will be evidenced by a new Addendum A. When accepting an offered position on a specific vessel, the IC shall be entitled to a cabin and food for one person.

C.      Hours of Work and Rest – IC shall work enough hours to effectively perform all required duties as defined and to ensure the success of the on board Art Auction

DocuSign Envelope ID: AF645330-A955-4323-93CA-24699DE1BC29

Program, subject to the below limitations. IC shall determine the work schedule to be followed and ensure that the work schedule is consistent with Hotel Director or IC's direct supervisor onboard the ship. Normal working hours shall be based on eight hours per day with a minimum one day of rest per week and rest on public holidays. Maximum working hours shall be 14 hours in any 24-hour period and 72 hours in any seven-day period. Minimum rest hours shall be 10 hours in any 24-hour period (including one period of at least six consecutive hours of rest) and 77 hours in any seven-day period. Daily hours of rest may be divided into no more than two periods, one of which shall be at least six hours in length, and the interval between consecutive periods of rest shall not exceed 14 hours. Time and attendance records will be kept.

D.      Other than as set forth herein, the Company shall not pay for or reimburse any personal or living expenses to IC. Expenses to be paid by the Company are only those set forth in writing by the Company (or TPAF).

E.      IC must electronically transmit art auction results to the Company (or others at the Company's direction) according to such policies and procedures as the Company may from time to time implement. The cost of such transmissions (if in accordance with Company procedures) will be borne by the Company.

F.      IC shall be solely and exclusively responsible for the filing of any and all tax forms, and the payment of all tax or similar obligations associated therewith, to which IC is subject as a result of this Agreement, including, without limitation, any tax imposed by any nationality or subdivision thereof. IC shall indemnify and hold Company and any TPAF harmless from and against any liabilities, costs, and expenses, including reasonable attorney fees, incurred by Company (or TPAF) for any tax liabilities or penalties by reason of IC's performance hereunder.

G.      IC will be provided medical coverage on board ship and ashore as required by Maritime Labor Convention 2006 and by the Flag State of the vessel to which the IC is assigned and where the IC obtains the illness or injury. The IC will have the right to receive treatment from a doctor or dentist within a reasonable time but only after the IC has been diagnosed by the Ship's Physician and said Physician has deemed it medically necessary to refer the IC for further diagnosis and/or treatment. All care will be paid for by the Company.

If IC must receive medical care which requires IC to be signed off the ship and returned to his/her country of residence, the Company will pay IC maintenance and cure in the amount of $15 USD per day in arrears until IC has been declared Fit for Duty or MMI (Maximum Medical Improvement) or until the time that maintenance

DocuSign Envelope ID: AF645330-A955-4323-93CA-24699DF1BC29

and cure are no longer required to be paid to the IC as per the requirements of the Flag State of the vessel to which the IC was assigned.  Maintenance and Cure  shall not exceed a period of 16 weeks.

Notwithstanding the foregoing, the Company shall not be required to provide Maintenance and Cure to the IC when any of the following occur:

- illness, injury, or death occurs other than during the term of this agreement;

- illness or injury is intentionally concealed at the time that IC's contract under this agreement begins;

- injury is incurred otherwise than in the services of the ship;

- injury or illness is due to the willful misconduct of IC;

- illness, injury, or death is a result of IC's drug, substance or alcohol use;

- any sexually transmitted diseases, including but not limited to HIV or AIDS;

- any illness or injury not disclosed in connection with any medical history questionnaire provided to the Company, including medical conditions;

- pregnancy; or

- any diagnosed permanent condition or incurable disease.

H.     IC's sole compensation shall be as stated in section 3(A) above. IC shall not receive from Company (or TPAF) any other compensation, fringe benefits, employee benefits, or any other benefits not explicitly provided under this Agreement.

I.     IC may not accept or receive any additional compensation, monies, or other benefits from merchants, business establishments, or any other third party during the term of this Agreement in connection with the services rendered herein.

J.     Company shall not be liable to IC for any expenses paid or incurred by IC unless agreed to in writing by Company (or TPAF). The Company shall pay for all repatriation expenses from the port of debarkation to the international airport closest to IC's gateway city of residence. Expenses to be paid include ground transportation, air transportation, food expenses, and a baggage allowance of up to 30kg as per flag requirements.

DocuSign Envelope ID: AF645330-A955-4323-93CA-24699DF1BC20

20201211                        IC Agreement                        Version December 2020

K.      The payment of compensation in the event of a ship foundering or loss shall be according to the rules of the Flag State.

L.      ICs assigned as Gallery Directors or Principal Auctioneers are additionally responsible for the costs of operating the art program on the ship, including cost of champagne or refreshments, costs of leasing the computer system from TPAF while aboard the vessel, costs of purchasing promotional art, and other costs.

M.      In the event of an act of piracy or on ship armed robbery resulting in the IC's being held captive, IC shall continue to receive compensation during the period of captivity as provided for in this section.

4.      TERMINATION.

A.      This Agreement shall automatically renew from voyage-to-voyage unless terminated by one of the following:

1.      the death of IC – In the event of death during the Term of this Agreement, the Company shall arrange and pay for the collection and return of IC's personal property to IC's designated next of kin. Also in the event of death during the Term of this Agreement, the Company will pay for reasonable burial expenses of a deceased IC who dies during the term of this Agreement, except to the extent that such expenses are assumed by governmental authorities. Also in the event of death during the Term of this Agreement, the Company shall provide a Benefit for Death to the IC's designated next of kin as follows: $50,000.00 USD and an additional $7,000.00 USD to each dependent under the age of 21 up to a maximum of 4 dependents. These benefits on death shall not be due or payable if the death is caused or contributed to by (1) suicide or other intentionally self-inflicted injury while sane or insane; (2) the voluntary use or consumption of any poison, chemical compound, alcohol or drug unless used or consumed pursuant to the directions of a licensed physician; or (3) the commission or attempted commission of an assault or felony; provided however that in the event of death under the circumstances described in this sentence the Company will pay for the collection, return and burial of the IC.

2.      the disability of the IC – Disability as used herein shall mean the inability of the IC due to illness, accident, or other physical or mental incapacity, to perform the services as IC as set forth in this Agreement.

DocuSign Envelope ID: AF645330-A955-4323-93CA-24699DF1BC29

3.    the termination of IC's services by the Company for cause – "Cause," as used herein, means: (a) substance or alcohol abuse, alcoholism, or any charge against IC for a felony or for a misdemeanor involving theft, violence, fraud, or moral turpitude; (b) acts of fraud by IC against the Company or any person or entity, including the vessel; (c) failure to comply with this Agreement or failure to comply with the policies, procedures, and regulations of the Company, TPAF, or vessel that may be established from time to time; (d) the resignation or abandonment by IC of employment; or (e) acts of disorderly conduct by IC towards the Company or any person or entity.

4.    the termination of IC's services by notice of nonrenewal – Either party may provide the other with written notice that it will not renew this agreement for future voyages, provided that such notice is provided to the other party at least 15 days in advance, with a termination date coinciding with a voyage-ending date

5.    for compassionate reasons - IC may terminate for compassionate reasons, which usually involves the illness or death of a close relative.

B.    IC and Company (or TPAF) agree that: IC is an independent contractor and is not obligated to accept assignments offered to IC by Company (or TPAF); there may be long periods of time during which IC is not offered assignments by Company (or TPAF) or does not accept assignments offered by Company (or TPAF); the passage of time between the offering of assignments by Company (or TPAF) or IC's acceptance of assignments offered by Company (or TPAF) does not cause this Agreement to be terminated; and this Agreement can only be terminated by IC or Company (or TPAF) in accordance with the terms of this Section 4 of this Agreement.

C.    Unless otherwise agreed to in writing, upon termination of this Agreement, IC shall cease to perform any services on behalf of the Company and on assignment by the Company shall disembark the vessel at the port of call in which the vessel is docked or, if at sea, at the next port of call visited by the vessel.

D.    Notwithstanding anything else in this agreement, IC has the right to terminate this agreement in accordance with the laws of the flag-country of the specific vessel to which IC is assigned as set forth in Maritime Labor Convention of 2006, Regulation 2.1, Standard A2.1.

E.    In the event of an act of piracy or on ship armed robbery, this Agreement shall remain in effect during the period of the IC's captivity regardless of whether a fixed date for its expiry has passed or a notice of termination has been issued.

5.    RENEWAL.

This Agreement, if not terminated in accordance with section 4 above, shall continue to automatically renew for successive one-voyage terms. During the course of each term, the termination provisions of section 4 shall continue to apply.

6.    GRIEVANCE POLICY.

A.    IC shall have the right to lodge a complaint of compensation or non-compensation nature and to have that complaint investigated, provided it is specific in nature and is alleged to constitute a breach of seafarers' rights under the Maritime Labor Convention of 2006. IC shall receive information regarding the Cruise Line/Ship's Grievance process at the time of embarkation.

B.    Any victimization against IC for filing a complaint is strictly prohibited. Victimization is understood to mean any adverse action taken or threatened by any person with respect to IC for lodging a complaint that is not manifestly vexatious or maliciously made.

C.    Park West's Director of Shipboard Operations has been designated as the person that will provide IC with impartial advice on his or her complaint. The Vice President of Operations will substitute in the absence of the Director of Shipboard Operations.

7.    CONFIDENTIALITY.

A.    IC acknowledges that the auctions which are the subject of this agreement are the creation and property of the Company and/or TPAF and that IC has no ownership or other interest in and to the auction program or to the artwork sold thereunder. IC has recognized and acknowledges that during the course of this Agreement IC will have access to certain information not generally known to the public or to competitors of the Company (or TPAF) relating to the business of the Company and/or any TPAF and their business relationships. This may include, without limitation: market surveys; pricing information; customer or contact lists; artist information including art pricing and contact information; any financial, business or legal information concerning the Company or any TPAF; sources of supply; information concerning artists or artwork; business plans; business prospects or projections; research; access to computerized data bases containing confidential information concerning artwork being sold by

Company or a TPAF; information concerning cruise lines; trade secrets; or any other proprietary or confidential matter (collectively "Confidential Information"). IC recognizes and acknowledges that the Confidential Information constitutes a valuable, special, and unique asset to the Company and/or the TPAF. IC agrees that, except as directed by the Company (or TPAF), IC will not at any time (whether during or after the termination of this contract) use in any manner directly or indirectly, disclose, or communicate to any person, or allow to be disclosed or communicated to any person, for any purpose other than for the benefit of Company (or TPAF), any such Confidential Information. IC agrees that the terms of this Agreement are reasonable and necessary to protect the Company and TPAF's legitimate business interests, including, without limitation, the confidential business or professional information and trade secrets of the Company or TPAF's, the substantial relationships between the Company or TPAF's and their clients, and the goodwill of the Company and TPAF's. IC further agrees that the enforcement of the terms of this Agreement, whether by injunctive relief, damages, or otherwise, is in no way contrary to the public health, safety and welfare.

B.     The TPAF to whom IC's services are made available by the Company may provide for IC's use a computer, both hardware and software, linking to the TPAF's proprietary computer systems and databases (the hardware, software and databases are collectively referred to as the "Computer System"). The Computer System must remain on the cruise ship at all times and must never leave the ship, except if removed by an authorized representative of the TPAF. In the event the IC removes from the ship or otherwise appropriates any hardware, software, data, or information compromising or associated with the Computer System, the IC shall be subject to an immediate fine of $10,000 deducted from any amounts owed to IC by the Company and/or TPAF, and the IC shall be subject to civil and/or criminal prosecution under the Economic Espionage Act.

C.     All papers, documents, computer equipment (hardware or software), books, and other records relating to IC's service for the Company or any TPAF, including all personal property or computer equipment, tangible or intangible, provided to IC by Company or any TPAF, are the sole property of the Company or the TPAF. IC shall not reproduce or duplicate any of the foregoing property or documents nor may IC disclose or distribute any such items to any third parties. All such documents, materials, and equipment shall immediately be returned to the Company (or TPAF) either upon termination of this Agreement or at any time upon request of the Company or the TPAF.

D.     IC shall safeguard any confidential client information of which IC or IC's assistants have knowledge or possession, including, but not limited to, social security and

credit card numbers. IC shall be solely responsible for any damages resulting from failure to properly safeguard such information.

8.    RESTRICTIVE COVENANT.

A.    IC agrees that during the term of this agreement and for a period of 24 months immediately following the termination of this Agreement for any reason and by either party, IC shall not in any manner, directly or indirectly, individually or as owner, partner, investor, joint venturer, employee, agent, independent contractor, auctioneer, salesman, or otherwise, conduct, engage in, provide services for, or become interested in, financially or otherwise, any business which provides, conducts or engages in auctions of any kind, art sales and/or the representation of artists on land anywhere in the world.

B.    IC acknowledges that IC will receive training, trade secrets and know-how (including without limitation, formulae, patterns, compilations, programs, devices, methods, techniques, and/or processes), regarding the conduct and operation of auctions of any kind, the sale of artwork, and/or the representation of artists ("Confidential Information").  IC agrees to hold in strict confidence and not directly divulge, disclose or communicate to others, nor make any use of, either during or after the termination of this Agreement, any Confidential Information, including but not limited to methods of operation, prices, products, recipes, processes, formulas, sales presentation or auction strategies, or any other information of any kind, nature or description concerning any matters affecting or relating to the business of auctions of any kind, art sales and/or the representation of artists..

C.    You have agreed that if you voluntarily terminate this Agreement within two years or if this Agreement is terminated for cause within two years of its inception, you will repay the company the expenses of your training and placement on board the ship on which you are working on a pro-rated basis. You will not be required to repay the Company if you are terminated other than for cause in accordance with the Company's or any TPAF's rules. Any repayment for these expenses may be deducted from any regular or other payment otherwise due to you from the Company..

.

9.    PROVISIONS APPLICABLE BOTH TO CONFIDENTIALITY AND THE RESTRICTIVE COVENANT.

The following provisions apply to both the confidentiality and noncompetition provisions of sections 7 and 8:

DocuSign Envelope ID: AF645320-A95E-4333-92CA-24699DE1BC20

A.   The provisions of sections 7 and 8 shall run in favor of, and may be enforced directly by, the Company or by any TPAF, including but not limited to Vista Fine Arts or Park West. Any TPAF may enforce these provisions directly, and independently of the Company.

B.   If IC commits a breach, or threatens to commit a breach of any of the provisions of sections 7 or 8 relating to confidentiality or the restrictive covenant, the Company (or any TPAF) shall have the right (in addition to any others that may be available under this Agreement, or at law or in equity) to have the provisions of sections 7 or 8 specifically enforced by any court of competent jurisdiction, and/or to obtain appropriate injunctive relief. IC acknowledges that any breach or threatened breach of sections 7 or 8 of this Agreement will cause irreparable injury to the Company (or TPAF), and that money damages shall not provide an adequate remedy. IC further agrees that in the event that a bond is required in connection with the issuance of a temporary injunction, such a bond or other undertaking shall not exceed $10,000.00 which amount has been determined by IC to be adequate.

C.   IC further agrees that in the event the Company, any TPAF, or its successors or assigns incurs any fees or costs, including reasonable attorney or other professional fees, to enforce the confidentiality or noncompetition provisions of sections 7 or 8, the Company or any TPAF may recover such amounts from IC.

10.   INDEMNIFICATION, HOLD HARMLESS, AND RELEASE.

A.   IC agrees to be solely liable for, and will indemnify and hold the Company and TPAF harmless from and against, any loss, claim, damage, expense, or liability (including attorney fees) that the Company (or TPAF) may incur arising out of IC's conduct, actions, or omissions in connection with IC's performance of his or her services for the Company or any TPAF.

B.   IC agrees that in order to secure the indemnification provided herein, the Company and/or any TPAF shall have the right, at its sole discretion, to retain any and all compensation due to IC at any time, for the purpose of setoff or otherwise, until the Company (or TPAF) confirms to its satisfaction that no claims exist, including claims for lost, stolen, or destroyed artwork.

C.   RELEASE – PLEASE READ CAREFULLY:

1.   IC agrees that IC is not and shall never be considered an employee of, or independent contractor for, any cruise ship or cruise line on whose ships IC performs services under this Agreement, or any TPAF (including Park West or Vista Fine Arts) for which IC provides services. With the sole exception

DocuSign Envelope ID: AF645320-A95E-4333-92CA-24699DF1BC20

of IC's right to receive from the Company commissions and benefits accrued under this Agreement, and expense reimbursements provided for by this Agreement, IC irrevocably and unconditionally releases the Company, all cruise ships and cruise lines on which IC performs services, and all TPAFs to whom IC's services are made available (including, but not limited to, Vista Fine Arts and Park West ), from and against any past, present. or future loss, claim, damage, or liability of any kind or nature whatsoever arising from IC's activities in connection with this Agreement. This release includes, but is in no way limited to, claims for personal injuries, medical malpractice, wages, or compensation, workers compensation, any fringe benefits not explicitly provided under this Agreement, claims under the Jones Act, claims under the Longshore Act, claims for maintenance and cure, claims for unseaworthiness not arising from the ship's loss or foundering, or any other claims of any type or nature. IC also agrees to indemnify and hold the Company, all cruise ships and cruise lines, and all TPAFs harmless with respect to any claim relating to IC's services under this Agreement. IC shall not assert any claims or maintain any liens on the cruise ships on which IC is stationed for any claim of any type or nature. IC shall not assert any claim against any cruise ship or cruise line for any action or negligence of any crew member or ship physician or doctor, including medical malpractice, and all such claims are released and discharged. IC shall not assert any claim contrary to the provisions herein.

2.     As stated above, IC has released, and shall not be entitled to assert, any claim of any type or nature against any TPAF, cruise ship, or cruise line. If IC shall, contrary to such provisions, assert a claim against a TPAF, or a cruise ship or cruise line, IC shall be responsible for all legal costs and attorney fees incurred by the Company, any TPAF, or any cruise ships or cruise line arising from such claims.

3.     IC acknowledges and agrees that IC shall secure additional insurance coverage if he or she so desires. However, in no event shall IC assert any claim against the Company, any cruise ship or cruise line, or any TPAF for any injury sustained by IC.

11.    WARRANTIES, REPRESENTATIONS, AND AGREEMENTS.

IC warrants, represents, and agrees as follows:

A.      IC is free to accept this contract, and IC's conduct under this Agreement will not violate the rights of any third party or result in the breach of any noncompetition or other agreement previously entered into by IC.

B.      IC shall not disparage, slander, or in any manner unlawfully interfere with the business of any competitor of the Company or any TPAF.

C.      IC is physically fit and will timely obtain all necessary certifications.

D.      IC will obtain all necessary government documents, and has or will execute Ship's Articles and abide by the orders of the Master and officers for services on board the cruise ship.

E.      IC shall have a valid passport, all necessary visas, and all other permits required by any governmental authority whether United States of America or foreign which documents enable IC to enter and leave the ports of call for the cruise ships on which IC is stationed. Fees paid to the government for required visas shall be reimbursed by the Company. Such reimbursement shall not include any other associated fees of any kind whatsoever.

F.      IC shall abide in all respects by the code of behavior and dress code established by the Master and the cruise line for each ship on which IC is stationed.

G.      IC shall promptly report to Company and any TPAF any improper, unlawful, criminal or other activity which affects or involves any Artwork or the marketing and sale thereof.

H.      IC shall, at IC's sole cost and expense, purchase any and all uniforms required by the cruise line(s) on which IC is stationed.

I.      IC acknowledges that the Company and/or TPAF has provided and may in the future provide policies and procedures applicable to IC's cruise ship art sales. All such policies and procedures, whether now in effect or hereafter promulgated, are incorporated by reference in this Agreement. IC's failure to comply with policies or procedures of the Company and/or any TPAF may result in imposition of fines or penalties to be deducted from IC's compensation, and /or may result in the termination of this contract.

J.      IC shall maintain a detailed and current knowledge of all artwork offered for sale and the prices of each item, and IC shall use his or her best efforts to promote the proper sale of the artwork with accurate information about the artworks. Under no circumstances shall IC engage in any fraudulent or improper conduct, or make any

20201211                          IC Agreement                    Version December 2020

false or misleading representations or statements concerning any artwork offered for sale.

K.      Other than as stipulated herein, IC shall be solely and exclusively responsible for any and all unauthorized expenses incurred by IC and any assistant requested by the IC. IC expressly authorizes Company to deduct from IC's compensation any unauthorized expenses for which Company is charged.

L.      IC shall have an executed copy of this Agreement available for inspection by officers of a competent authority at all times while on board a vessel designated by Company (or TPAF).

12.     PROHIBITED CONDUCT.

While serving aboard the cruise ships, IC shall not be permitted to:

A.      Carry or consume any narcotic or other drug which is prohibited, or for which a doctor's prescription would be required except pursuant to a program of medical care, under the direct supervision of a physician;

B.      Board the vessel in an intoxicated state, or consume alcoholic beverages aboard any vessel to the point of intoxication or to the point where during the subsequent performance of IC's duties such consumption could become apparent to the passengers;

C.      Engage in any form of gambling aboard the vessel;

D.      Market or sell any art, merchandise, or items (other than for Company (or TPAF)) to passengers, crew members, or any third party;

E.      Delay the sale of any art in an effort to consummate such sale after the cruise—all art sales shall be consummated during the cruise;

F.      Enter the cabin of any passenger or permit any passenger to enter IC's cabin;

G.      Possess any firearm or offensive weapon or threaten or commit any act of physical aggression toward any passenger, crew member, or other third party;

H.      Act in any way which brings discredit to Company or to IC.

13.     ARTWORK INVENTORY.

IC shall maintain a current scanned inventory of all artwork in IC's possession and a copy of said scanned inventory must be given to Company monthly and at the time of handover

to another IC. In addition to the safekeeping of the artwork during each cruise, IC shall be responsible at the conclusion of each cruise to: (A) return any artwork requested by the Company (or TPAF); (B) provide an accounting of the artwork to the Company (or TPAF); or (C) tender all of the artwork to the next IC to be stationed on the cruise ship IC is leaving, and to obtain from the next IC a written receipt for all of the artwork. The original written receipt for the artwork must be given to the Company (or TPAF) with a copy to be retained by IC as well as the IC to whom the artwork is tendered. IC shall be responsible for any artwork that is lost, stolen, or damaged. Company (or TPAF) shall have the right to set-off any compensation owed to IC on account of artwork which is lost, stolen, or damaged.

14.   PERSONAL SERVICES, SUCCESSORS, AND ASSIGNS.

This Agreement requires the personal services of IC and shall not be assignable by IC. The Company may assign this Agreement. IC's agreements herein shall run in favor of the Company, and any TPAF (including Park West and Vista Fine Arts ) to which IC's services are made available shall be entitled to the benefits of this Agreement.

15.   SURVIVAL.

All rights, obligations, and liabilities timely accruing thereunder shall survive termination of this Agreement.

16.   NOTICES.

Any and all notices to the parties which may be required under this Agreement shall be in writing and shall be given by hand-delivery, or by registered or certified mail, or by overnight courier, at the addresses shown above unless the parties designate alternate addresses.

17.   GOVERNING LAW.

This Agreement shall be construed and enforced in accordance with the laws of the Turks & Caicos Islands, the requirements of the Flag State, and the Maritime Labor Convention. Provided, however, if the Company or any TPAF initiate legal proceedings in a jurisdiction other than the Turks & Caicos Islands, pursuant to section 18 below, the law of the jurisdiction in which the action is filed shall apply.

18.   ARBITRATION, JURISDICTION AND VENUE.

A.      A.      Any controversy, claim, or dispute arising out of, or relating to, this Agreement, or arising out of IC's service on any cruise line, including claims against the Company, TPAF, any cruise line, or all, that cannot be resolved informally, shall be settled by arbitration administered by the arbitrator, who shall

be agreed to, and appointed by, the parties.  Arbitration may be initiated by any party to this agreement by demanding arbitration in writing, delivered by certified mail, to the other party, naming three (3) potential arbitrators.  The arbitrator shall be an arbitrator being a professional person practicing as a professional arbitrator in the Turks and Caicos Islands or with similar appropriate qualifications.  If the parties cannot agree on such an arbitrator within fourteen (14) days of the notice by one party requesting the appointment of said arbitrator, then the parties shall submit to the decision of a person appointed by the Turks and Caicos Bar Association, and the parties shall be bound by the appointment of such arbitrator.  The arbitration shall be held in Providenciales, Turks and Caicos Islands at a time and place specified by notice, in writing, given by the arbitrator to the parties at least twenty-one (21) days before such an arbitration date.  The arbitration shall be subject to the rules and procedures of the Turks and Caicos Islands Arbitration Ordinance. Judgement on the award rendered by the arbitrator may be entered in any court in the Turks and Caicos Islands.  The parties agree that the judgement on the arbitration award shall be entitled to full faith and credit.

B.     This arbitration shall be governed by the laws of the Turks and Caicos Islands, the requirements of the Flag State, and the Maritime Labor Convention.  The parties hereby submit to the terms of arbitration as set forth above and to the jurisdiction of the Supreme Court of the Turks and Caicos Islands regarding all matters arising from any such arbitration, arbitration proceedings, arbitration award, or appeal therefrom.

C.     JONES ACT – This agreement shall not be interpreted to disclaim or waive any remedy available under the United States' Merchant Marine Act of 1920, commonly known as the Jones Act.  The parties agree to arbitrate any claim arising under the Jones Act in accordance with, and consistent with, the laws of the courts of the United States in any arbitration pursuant to this section of the agreement.

D.     The parties being apprised of all their respective and prospective rights and available remedies agree that they will faithfully abide by the terms of this Agreement, and will honor any award rendered by the arbitrator and any judgement by a court in the Turks and Caicos Islands.  The parties being informed of their respective and prospective rights and available remedies, acknowledge and agree that the courts of the Turks and Caicos Islands are competent and utilize proceedings consistent with civilized jurisprudence.  The parties further acknowledge that courts of the Turks and Caicos Islands render decisions consistent with the public policy and law of civilized nations.

DocuSign Envelope ID: AF645320-A95E-4333-93CA-24699DE1BC20

Notwithstanding the agreement to arbitrate the Company or any TPAF may, at their discretion, initiate legal proceedings against IC in a forum other than the Turks & Caicos Islands, solely for the purpose of seeking injunctive relief to restrain IC from breaching any of the confidentiality or noncompetition provisions of this Agreement. In the event such a proceeding is brought, the Company or any TPAF may also assert, in conjunction with such claim, any money damage claim against IC. Further, in the event such an action is brought, the applicable law shall be the law of the jurisdiction in which the action is filed.

### 19.    NO MODIFICATION.

This writing is intended by the parties as a final expression of their agreement and as a complete and exclusive statement of the terms thereof. All negotiations, consideration, and representations between the parties have been incorporated herein. No consideration of prior dealings between the parties or their officers, employees, agents, or affiliates shall be relevant or admissible to supplement, explain, or vary any of the terms of this Agreement. No representations, understandings, or agreements have been made or relied upon in the making of this Agreement other than those specifically set forth herein. This Agreement may be modified only by a writing signed by the party against whom the modification is enforceable.  This Agreement overtakes and supersedes any prior agreements written or oral, among the parties.

### 20.    SEVERABILITY.

If any portion of any term or provision of this Agreement, or the application thereof, to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be effected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

### 21.    CONSTRUCTION.

IC acknowledges that although this Agreement was initially drafted by the Company, IC has had an opportunity to fully review this Agreement prior to its execution, and to request any changes as to its scope or form. IC agrees that there shall be no presumption in the construction or interpretation of this Agreement in favor of, or against, either party, as to any particular provision.

20201211                              IC Agreement                    Version December 2020

IN WITNESS WHEREOF the parties have executed this Agreement on the date first above written.

COMPANY                                        Witness

_____               _____
(Signature)                                    (Signature)

        Paul Bielby                                    Sue Miller
_____               _____
(Print Name)                                   (Print Name)

   VP of Sales
_____
(Title)


INDEPENDENT CONTRACTOR                         Witness

_____               _____
(Signature)                                    (Signature)

   Christhian Oliver Gonzalez                   Keren andino
_____               _____
(Print Name)                                   (Print Name)

 Houston Texas United States
_____
(Where Signed)

DocuSign Envelope ID: AF645320-A95F-4333-92CA-24699DF1BC20

20201211                                          IC Agreement                        Version December 2020

## WAIVER AND RELEASE OF CLAIMS

I agree that I am an independent contractor ("IC") and not an employee of Caribbean Staffing Solutions ("CSS"), and that I do not wish to be treated as an employee for tax purposes or insurance purposes, and that I am responsible for paying any taxes, and am responsible for my own health and/or disability insurance, and workers compensation, should I choose to have such coverage.

Also, it is understood and agreed by me that CSS's sole responsibility to me shall be the payment of commission for work performed.

As such, except for any claims for commission due me, as defined by my contract with CSS, I hereby waive and release all other claims or benefits of any nature whatsoever, including all claims arising from or related to any personal injury or loss I sustain in the course of performing my contractual duties for CSS. The foregoing waiver shall apply regardless of whether I have health or disability insurance coverage or workers compensation at the time of such injury of loss.

I further agree that under no circumstance shall I ever be considered an employee of, or independent contractor for: (1) any firm which conducts art auctions on cruise ships and to whom my services may be made available by CSS (any such firm, including Park West and Vista Fine Arts, shall be considered a Third Party Auction Firm or "TPAF"); or (2) any cruise line on whose ships I am performing services under my contract with CSS. As such, I hereby waive and release all past, present, or future claims of any kind or nature I may have at any time hereafter against any such TPAF or cruise line, including but not limited to claims for personal injuries, medical malpractice, wages, claims under the Jones Act or Longshore Act, claims for maintenance and cure or unseaworthiness, claims for commissions, claims for workers compensation or any similar law applicable to marine based employment, claims for health or disability insurance or benefits, and all other claims of any type or nature.

Dated this ____14____ day of ____March_____, __2021__.


INDEPENDENT CONTRACTOR                    Witness

_____        _____
(Signature)                              (Signature)

        Christhian Oliver Gonzalez               Keren andino
_____        _____
(Print Name)                             (Print Name)

DocuSign Envelope ID: AF645320-A95F-4333-92CA-24699DE1BC20

20201211                                IC Agreement                          Version December 2020

## POLYGRAPH CONSENT FORM

I acknowledge that as an independent contractor for Caribbean Staffing Solutions ("CSS"), I have access to certain highly confidential and proprietary information of CSS, or art auction firms to whom my services may be made available by CSS (Third Party Auction Firm or "TPAF"), as well as trade secrets, customer lists, marketing strategies, and pricing information. I also acknowledge that from time to time, in the capacity as an independent contractor, I will have possession of expensive merchandise, including but not limited to artwork, belonging to CSS or a TPAF, as well as substantial amounts of cash, checks, and other property of CSS or a TPAF.

I further understand that CSS (and the TPAFs) is committed to maintaining the highest possible level of integrity in its operations, and requires complete honesty and personal responsibility from all of its independent contractors.

As such, I hereby consent to a polygraph (lie detector) examination upon demand by CSS at any time or times while I am associated with CSS as an independent contractor, or within 90 days of the termination of my association with CSS. I agree that my failure to submit to a polygraph examination upon demand shall be considered a material breach of my contract with CSS, and that in the event of such a failure, CSS may exercise all rights and remedies it may have against me in the event of a contractual default. I also agree that CSS may withhold any compensation due to me, as specified in my contract, pending the results of any polygraph examination. I understand that CSS may administer polygraph examinations at any time, with or without notice, including on board ships or in ports of call, and that CSS may engage in random polygraph testing at its sole discretion.

Dated this ___14___ day of ___March_____, __2021__.


INDEPENDENT CONTRACTOR                   Witness

_____        _____
(Signature)                              (Signature)

      Christhian Oliver Gonzalez         Keren andino
_____        _____
(Print Name)                             (Print Name)

19

20201211                          IC Agreement                    Version December 2020

ADDENDUM A: WORK ASSIGNMENT

       Name:
       Nationality:
       PP#:
       DOB:

Dear (Name of IC):

This is to verify that you have been contracted by Caribbean Staffing Solutions, whose services have been made available to Park West. Park West currently operates on over 90 ships operated by Carnival Cruise Line, Celebrity Cruises, MSC, Norwegian Cruise Line, Princess Cruises and Royal Caribbean Cruise Line.

You are being offered an assignment to join the following vessel as the Principal Auctioneer / Gallery Director / Art Associate / Art Assistant / Art Steward:

       Cruise Line Name and Address:
       Ship:
       Vessel Owner:
       Date of Embarkation:
       Port of Embarkation:

The assignment length will be up to 6 months.

If you have questions on the above information, please call (305) 817 - 6400 ext. 2009 during normal business hours or call the weekend/emergency number (305) 796 - 5209.


CSS